The evidence authorized the police committee of the City of Atlanta to find that the defendant police officer had been under the influence of intoxicating liquor, in violation of the rule of the committee which provides that any member of the police department who has been under the influence of intoxicating beverages will, upon conviction after trial before the committee, be dismissed from the police force.
 DECIDED MARCH 20, 1941.
S. L. Holloman filed in the superior court of Fulton County a petition for the writ of certiorari to be directed to C. M. Bolen, John T. Marler, Cecil Hester, E. A. Minor, and William B. Hartsfield, constituting the police committee of the mayor and general council of the City of Atlanta. The petition showed the following: On February 20, 1940, and for many years previous thereto, the petitioner was a lawfully appointed officer of the police department of the City of Atlanta, a municipal corporation of the State of Georgia, and on such date the defendants constituted the lawfully designated and authorized police committee of the city; that petitioner was employed and appointed as a member of such police department during "good behavior and efficient service to be judged of by the police committee;" that such police committee, pursuant to legislative authority, had authority to provide rules for the trial, suspension, and dismissal of officers and members of the police department of the city; that petitioner was dismissed from the police department of such city upon conviction by such police committee of having been under the influence of intoxicating liquor. The specific charge on which petitioner was tried was as follows: "You are hereby charged with conduct unbecoming an officer of the police department of the City of Atlanta, and with violation of the rules of said department in the following particulars: you appeared at roll call at the police barracks in full uniform at 4 p. m., February 12, 1940, under the influence of intoxicating liquors. You are hereby notified to appear for trial before the police committee at police headquarters at 7:30 p. m. Friday, February 16, 1940. M. A. Hornsby, Chief of Police." Rule 276 of the rules adopted for the government of the police department by the police committee provides as follows: "Any member of the department who has been known to have been under the influence of any intoxicating beverages, *Page 537 
such as beer, wine, gin, rum, whisky, or any other type of alcoholic drink, or any type of mixed drinks, either while on or off duty, will be dismissed from the force, after due trial and proven guilty by the police committee of council." Petitioner appeared before the committee on February 20, 1940, and entered a plea of not guilty to the charges. Whereupon the witnesses for and against the plaintiff were sworn and the matter proceeded to trial before the committee.
G. Neal Ellis, a captain of the police department, testified for the prosecution, in part as follows: "I talked to officer Holloman and saw he had a drink. . . As to whether or not in my judgment he was under the influence of intoxicating liquors at that time, he was. . . He wasn't drunk. . . I smelt his breath. As to what he appeared to have had, I couldn't tell what it was; it was alcohol odor. . . He had the odor of alcohol on his breath. He seemed to be [in] full possession of his faculties. He wasn't drunk, but by close observation you could tell he had a drink. . . It was 4:05 when we go out of the roll call and went into the captain's office, and it was about, I imagine, 4:15 when I was in the chief's office with him." This witness testified that the petitioner had a "tough beat;" that he worked his beat well and kept it clean; and that he was a good officer on his beat. Lieutenant J. C. Atha of the police department testified in part as follows: "I saw Mr. Holloman on this date. As to whether or not he was under the influence of intoxicating liquors, . . at roll call Captain Ellis called us into his office . . and when we got in there I spoke to Mr. Holloman and I detected that he had been drinking by smelling it on his [him]; and, of course, as soon as the captain excused us I called officer Holloman and told him he had been drinking, and called it to the attention of Captain Ellis that he had been drinking some intoxicating drink, and that I could smell it on him. I didn't detect it on him as I went down the line as we have inspection, and I didn't detect it on him in line there, but when we got in the office I did detect he had been drinking. . . As to whether or not he was under the influence of that drink, well, he wasn't a drunk man, but you could tell that he really had had a drink. I could tell it in his eyes after I looked at him close. As to whether he was in shape to be sent out on the beat on duty, well, I didn't want him to go out after I found out what was going *Page 538 
on." M. A. Hornsby, chief of police, testified in part as follows: "On this particular day . . about 4:15, Captain Ellis and Lieutenant Atha brought Mr. Holloman in my office, and Mr. Holloman was noticeably under the influence of alcohol. You could tell it in his eyes and his face; the odor was very strong on his breath. . . I wouldn't have sent him out on his beat. . . As to whether he seemed to be in possession of his faculties, it was about like Captain Ellis said, he wasn't staggering drunk or anything like that, but he was noticeably under the influence" of intoxicating liquor. W. H. Faith testified for the defense in part as follows: "I know Mr. Holloman. I picked him up at his request to go to Mayor Hartsfield's office. He rode on the seat with me. . . I talked to him. As to whether he appeared to be in possession of his faculties, his thinking, his talking, or whether there was anything about him to indicate that he was under the influence, the slightest influence of intoxicants, no, sir. I left the station house with him approximately about 4:25 or 4:30."
J. D. Williams, a police officer, testified in part as follows: "I was in line with him [Holloman] that afternoon. I stood next to him. As to whether I stood next to him often, . . every afternoon when he is working and I am working. I did not detect anything wrong with him that afternoon when he stood by me. . . I didn't smell anything on his breath. As to whether he acted any different that afternoon from any other afternoon that I had been standing by him, no, sir." P. H. Goodwin, a police officer, testified for petitioner substantially to the same effect as Williams. D. T. Barge testified in part as follows: "I recall seeing Mr. Holloman in the assembly room . . and speaking to Mr. Holloman. . . As to whether I detected anything wrong with him, no, sir. . . He looked like he always did. As to whether he talked like he always did, so far as I know he did." H. E. Burdett, a detective of the City of Atlanta, testified that he had seen the petitioner on the afternoon of February 12, 1940, and that he had not noticed that he was under the influence of liquor, and had not smelt any liquor on him. In his statement before the committee the petitioner stated that he could not drink whisky on account of his health; that his physician had forbidden him so to do; that on this particular day he had drunk a bottle of beer at noon when he had his lunch; that he was at home at the time; that he had had nothing *Page 539 
else to drink; and that he frequently drank a bottle of beer with his lunch, his physician having advised him that it would help him to do so. The evidence adduced before the committee tended to show that the petitioner was "slue footed," and therefore walked with a peculiar shuffle, and also that the petitioner's face was continually red and that he looked to many people who did not know him well like a person whose face was flushed from having indulged in intoxicating liquors.
The foregoing allegations of the petition for certiorari were admitted as true by the committee whose judgment was excepted to. The judge overruled the certiorari, and the petitioner excepted.
The plaintiff in error, who will hereinafter be called the defendant, and who was an officer of the police department of the City of Atlanta, was charged by the chief of police in a written charge presented to the police committee, with being "under the influence of intoxicating liquors" at roll call at the police barracks, while in full uniform, at 4 p. m. on February 12, 1940. The charge against the defendant was a violation of a rule adopted by the police committee for the government of the police department of the City of Atlanta which provided that "any member of the department who has been known to have been under the influence of any intoxicating beverages, such as beer [and other described drinks], or any other type of alcoholic drink, or any type of mixed drinks, either while on or off duty, will be dismissed from the force, after due trial and proven guilty by the police committee of council." There is presented no question as to the legality of the proceedings. The police committee was a judicial body, which in the exercise of judicial powers heard the charges and after hearing evidence found the defendant guilty, as charged, of a violation of a rule which had been adopted by the police committee for the government of the police department.
The sole question presented is, did the evidence authorize the finding by the committee that the defendant, at the time alleged, had been under the influence of intoxicating liquor? The testimony of several of the police officers was to the effect that, from *Page 540 
close contact with the defendant, and from observation and from smelling his breath and observing his eyes, he was under the "influence of intoxicating" liquor, but that he was not drunk. The testimony of the chief of police and of the lieutenant was, that based on the defendant's condition, which was that he had been drinking, they would not have consented for him to go out on his beat. It is true that the officers who testified that the defendant was under the influence of intoxicating liquors also testified that he was "not drunk," and that he seemed to be in full possession of his faculties. It is insisted that if the defendant at the time was in full possession of his faculties, notwithstanding he had drunk some intoxicating liquor, he was not under the influence of it. The testimony must be construed in its entirety, and statements therein must be reconciled if possible and not construed as antithetical. The testimony of the officers that the defendant seemed to be in full possession of his faculties, when construed as consistent with their testimony that the defendant was under the influence of intoxicating liquor, must be taken as meaning that the defendant was sane, knew the difference between right and wrong, and had the ability of normal locomotion, etc. The defendant could be in possession of all his faculties in this sense and still be under the "influence" of intoxicating liquor. The evidence of the police officers was sufficient to authorize the police committee to find that the defendant, at the time referred to, had been under the influence of intoxicating liquor, in violation of the rule above quoted. The judge did not err in overruling the certiorari.
Judgment affirmed. Sutton and Felton, JJ., concur.